IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA BRADLEY, | ) | CASE NO. 1:19-CV-161 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | |
| CITY OF SOLON, *et al.*, | ) | **OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court are three motions: Defendants City of Solon and Nicole Tancredi's Motion to Dismiss, Doc #: 7, Plaintiff Joshua Bradley's Motion for Case Management Conference and Request for Track Recommendation, Doc #: 14, and Defendants' Motion to Strike Plaintiff's Rebuttal, Doc #: 15. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Motion is **DENIED AS MOOT** and Defendants' Motion to Strike is **GRANTED**.

I. Background

During the late hours on November 3, 2018, the Highland Heights Police Department ("HHPD") received a call from the East Cleveland Police Department ("ECPD") that Plaintiff Joshua Bradley had been arrested pursuant to an HHPD warrant for failing to appear on traffic-related charges. McCallister Rep.; Doc #: 9-1 at 7. HHPD Officers Cox and Setlock responded to Monticello and Green Roads to meet ECPD and take Bradley into HHPD custody. Setlock Rep.; Doc #: 9-1 at 5. When the HHPD Officers arrived, ECPD Officer Foti removed Bradley from the rear of his cruiser and advised the HHPD Officers that Bradley had been uncooperative. *Id.* While being patted down and re-hand-cuffed, Bradley cooperated with HHPD and followed

1

the Officers' commands. *Id.* As Officer Setlock was hand-cuffing Bradley and placing him into the HHPD's cruiser, Officer Setlock noticed that Bradley was wearing a medical wristband. Officer Setlock asked ECPD Officer Foti what happened. *Id.* Officer Foti stated that Bradley was homeless and had been in his car with a laptop. *Id.* Bradley was allegedly approached by two men who may have stolen his laptop. *Id.* ECPD was called to the scene and eventually took Bradley to UH to psychiatric evaluation. *Id.* Bradley was released from UH after 10-15 minutes and returned to the area where the two men allegedly stole his laptop. *Id.* ECPD was again called to the scene after reports of Bradley chasing the two men in his car. *Id.* When ECPD arrived, the Officers allegedly wrestled with Bradley and Officer Foti stunned Bradley twice with his taser. *Id.*

HHPD Officer Setlock notified HHPD Officer McCallister of the situation and asked Officer McCallister to meet him at HHPD jail with Bradley. *Id.* While in route, Officer Setlock asked Bradley what had happened with the ECPD Officers. *Id.* Bradley stated that he was sore and had been wrestled to the ground by 5-6 ECPD Officers. *Id.* The ECPD Officers put him in a choke hold and tasered him twice. *Id.* At HHPD jail, photos were taken of Bradley to document his condition. *Id.* Bradley had visible bruising, scrapes, and red welts consistent with wrestling on the ground. *Id.* After documenting his injuries, Officer McCallister contacted HHEMS and had Bradley transported to UH for treatment and diagnosis. McCallister Rep.; Doc #: 9-1 at 7. Officer McCallister then called ECPD to ask about the incident. *Id.* ECPD advised Officer McCallister that they were not filing charges against Bradley for resisting arrest. *Id.* A short time later, Officer McCallister asked Officer Setlock to call ECPD to get copies of ECPD's reports of the incident and the names of the ECPD Officers involved. *Id.* Officer Setlock followed up with ECPD and ECPD Officer Stephenson advised Officer Setlock that ECPD had

no reports from their contact with Bradley that night and did not plan to make any reports or file charges against Bradley for resisting arrest. Setlock Rep.; Doc #: 9-1 at 5. Officer Stephenson stated that he and the three other ECPD Officers—Officers Welms, Foti, and Woodside—who engaged with Bradley were wearing body cameras but that the audio may be "questionable." *Id.* Officer Stephenson confirmed that the ECPD Officers used force when arresting Bradley. *Id.*

The ECPD Officers did not report having Bradley evaluated for injuries or medical treatment after the altercation. McCallister Rep.; Doc #: 9-1 at 7. Further, ECPD did not advise HHPD of any potential medical or mental health issues when ECPD called HHPD to confirm the warrant. *Id.* In Officer McCallister's words:

> Bradley was turned over to HHPD in a suspected mental health crisis after being forcefully dealt with by the East Cleveland Police Department and not having been offered medical treatment or criminally charged for an offense after what seemingly would be **a substantial amount of force**.

*Id.* (emphasis added). Officer McCallister noted several concerns in his incident report including that "HHPD was not contacted until after the second dealing that involved a substantial use of force . . . [w]hy was this amount of force used when the warrant wasn't even confirmed?" *Id.* Officer McCallister added: "[t]he other issue with this use of force is that no criminal charges were filed against Bradley for his resisting arrest." *Id.*

When HHPD took Bradley to UH for diagnosis and medical treatment, he was diagnosed with a rib contusion and given a prescription for pain medication. Compl. ¶ 9. HHPD then transferred him to the City of Solon's jail at 8:30 a.m. on November 4, 2018. *Id.* at ¶ 10. HHPD notified Solon Police Department Officer Rose of Bradley's serious injuries. *Id.* at ¶ 11. Bradley was in serious pain when he arrived at the Solon jail and requested to be taken back to the emergency room. *Id.* at ¶ 12-13. SPD Officers told Bradley to take his medication first before they would consider taking him back to the emergency room but his prescription for pain

3

medication had not yet been filled. *Id.* at ¶¶ 13-14. Instead, the SPD Officers gave Bradley Ibuprofen at around 9:00 a.m. *Id.* at ¶ 15. Over the next four hours, Bradley continued to beg to be taken to the emergency room and did not received his prescription medication until 1:00 p.m. *Id.* at ¶¶ 16-17. He experienced significant pain in his ribs, wrist, and throat—so much so that he was unable to eat when offered meals. *Id.* at ¶¶ 18-19. During this time, SPD Officer Nicole Tancredi told Bradley that he could not go back to the emergency room because she personally did not believe that he was injured. *Id.* at ¶ 20. Bradley asked Tancredi for a medical request complaint form but was told there were no extra copies and instead was given a grievance complaint form. *Id.* at ¶¶ 26-27. Bradley was released at 5:00 p.m. that same day, November 4, 2018, and was diagnosed with several physical ailments related to the altercation with ECPD upon his release from the jail. *Id.* at ¶¶ 28-31.

Bradley filed this action on January 22, 2019 against the City of Solon and Officer Tancredi. *See* Compl.; Doc #: 1. Bradley asserts three 42 U.S.C. §1983 claims against the City and Officer Tancredit along with two tort claims and one claim for civil liability for criminal acts under O.R.C. § 2307.60(A)(1). The City and Officer Tancredi filed a Motion to Dismiss on April 1, 2019. Doc #: 7. Bradley filed his Opposition brief on April 12, 2019. Doc #: 9. Defendants filed their Reply brief on April 26, 2019. Doc #: 11. Bradley filed a Sur-Reply and Motion for Case Management Conference and Request for Track Recommendation on April 29, 2019. Doc #: 13, 14. Defendants filed a Motion to Strike Bradley's Sur-Reply on April 30, 2019. Doc #: 15.

**II.    Standard of Review**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-

moving party. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plausibility standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints alleging "naked assertion[s]" devoid of "further factual enhancement" will not survive a motion to dismiss. *Twombly*, 550 U.S. at 557. In addition, simply reciting the elements of a cause of action or legal conclusions will not suffice. *Iqbal*, 556 U.S. at 678.

III. Analysis

    A.     42 U.S.C. § 1983 Claims

        1.     **Officer Tancredi**

Bradley alleges that Officer Tancredi was deliberately indifferent to his need for medical treatment in violation of his Fourteenth Amendment rights. Compl. ¶¶ 39-44. The Eighth Amendment forbids prison officials from acting with deliberate indifference toward an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). A pre-trial detainee may allege a cognizable claim for deliberate indifference to medical care when an official intentionally denies or delays access to medical care for a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Thus, in order for a plaintiff to properly plead a deliberate indifference claim, he must allege that: (1) he suffered from a "sufficiently serious" medical need; and (2) the

defendant perceived facts from which to draw an inference that a substantial risk of harm existed, that the defendant drew the inference, and that the defendant then disregarded the risk.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Inherent in this standard for determining whether a medical need is "serious" is that the medical need has not yet been treated or brought to a doctor's attention. In this case, Bradley did not have a serious medical need that mandated treatment or a doctor's attention because he had already been admitted to the emergency room, treated by a doctor, and given a prescription for pain medication *that same day*. He was discharged from the emergency room around 8:30 a.m. on November 4, 2018. Bradley asked to be returned to the emergency room because of pain at 9:00 a.m., before Officer Tancredi was able to fill and administer to Bradley his prescribed medication. Bradley does not allege that he suffered further injuries between being discharged from the hospital and arriving at the Solon jail. Thus, Bradley's injuries had already been examined and treated by a doctor that same day.

Officer Tancredi did not give Bradley his prescribed pain medication until 1:00 p.m., over four hours after he had been discharged from the hospital. But even if Officer Tancredi had been able to obtain the medication earlier than 1:00 p.m., which Bradley does not allege she was able to do, the mere existence of delay in receiving treatment is insufficient to allege a claim of deliberate indifference. *Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013). Bradley does not allege that he suffered further injuries because of this delay in receiving his pain medication. Accordingly, Bradley has not sufficiently pleaded facts to state a claim for a §1983 due process violation.

### 2. The City

Bradley also asserts a Fourteenth Amendment claim against the City of Solon based on the City's alleged failure to adequately train and supervise its officers. To succeed on such a claim, Bradley must allege that his constitutional rights were violated, and a municipal policy or custom was the moving force behind the violation. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Bradley has not adequately pleaded a § 1983 claim for municipality liability because he has not met the threshold element of adequately pleading that his constitutional rights were violated.

### 3. Eighth Amendment

Bradley also claims that Officer Tancredi was deliberately indifferent to his medical needs in violation of the Eighth Amendment. The Eighth Amendment's protections do not apply to pre-trial detainees like Bradley. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that the Eighth Amendment proscription of cruel and unusual punishment does not apply to pre-trial detainees). Thus, Bradley cannot make a § 1983 claim pursuant to the Eighth Amendment. However, the due process protections afforded to a pretrial detainee are analogous to those afforded to inmates under the Eighth Amendment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Bradley has already made a claim pursuant to the Fourteenth Amendment's due process clause and the Court found that Bradley's § 1983 claim pursuant to the Fourteenth Amendment was not adequately pleaded.

### B. O.R.C. § 2307.60(A)(1) Claim

Bradley next makes a claim against Officer Tancredi for civil liability for criminal acts under Ohio Revised Code § 2307.60(A)(1). Bradley alleges that Officer Tancredi violated Ohio

Revised Code § 2921.45(A) for interfering with his civil rights and should therefore be civilly liable pursuant to § 2307.60(A)(1). Officer Tancredi argues that § 2307.60(A)(1) requires a criminal conviction as a condition precedent to civil liability. However, the Court need not address this issue because Bradley has not sufficiently pleaded facts that would state a claim for a civil rights violation.

      **C.**      **State Tort Law Claims**

Lastly, Bradley alleges two state law tort claims against Officer Tancredi for intentional infliction of emotional distress and for negligent infliction of emotional distress. Bradley's state law tort claims must be analyzed under Chapter 2744 of the Ohio Revised Code because Officer Tancredi is an employee of a political subdivision—the City of Solon. *See* O.R.C. § 2744.01(B). Officers, like Officer Tancredi, enjoy immunity from tort claims that arise in connection with their official police duties unless immunity is abrogated by one of the exceptions in O.R.C. § 2744.02(B). Bradley does not allege that any of these exceptions apply nor after careful review does the Court find that an exception applies. Thus, Officer Tancredi is immune from liability regarding Bradley's state tort law claims. Accordingly, these claims must be dismissed.

      **D.**      **Motion to Strike**

Bradley filed a Sur-Reply on April 29, 2019, without first obtaining leave of Court. In his Sur-Reply, he repeats the arguments made in his Opposition brief. Doc #: 13. Defendants filed a Motion to Strike Bradley's Sur-Reply on April 30, 2019. Doc #: 15. Neither Local Rule 7.1 nor the Federal Rules of Civil Procedure authorize a non-moving party to file a sur-reply without leave. The Court recognizes that as a pro se litigant, Bradley is entitled to some leniency with regard to his pleadings; however, it is well-settled that pro se litigants are obligated to

follow federal and local rules of procedure. *See Greer v. Home Realty Co. of Memphis Inc.*, 2010 WL 6512339 at *2 (W.D. Tenn. Jul. 12, 2010). Because Bradley has not sought permission from the Court to file his Sur-Reply and his Sur-Reply contains no new arguments that were not previously included in his Opposition brief, the Court will grant Defendants' Motion to Strike.

**IV.     Conclusion**

Accordingly, Defendants' Motion to Dismiss, Doc #: 7, is **GRANTED**. Plaintiff's Motion for Case Management Conference, Doc #: 14, is **DENIED AS MOOT** and Defendants' Motion to Strike Plaintiff's Sur-Reply, Doc #: 15, is **GRANTED**. Because Bradley is a pro se litigant, the Court feel it is appropriate to point out that the HHPD officers' reports cited above raise questions about ECPD's use of force against Bradley. Bradley may wish to consult an attorney.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster May 13, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT COURT**